### KATY MANN *vs.* JOSIAH DUNHAM.

Doubtful words of boundary, in a partition in the probate court, are not to receive a con struction peculiarly favorable to the person whose lot is described first.

In a partition in the probate court, a strip of land, described as one hundred and thirty feet long, and of equal width throughout, and bounded at the northeasterly end by a street called the Old Road, and at the southwesterly end by Fifth Street, was divided thus: There was first set off to A a house and land, bounded " northeasterly on the Old Road," and " southwesterly on house and land hereinafter described, number eight," and twenty feetdeep; and another lot of land bounded " southwesterly on Fifth Street," and " north-easterly on land hereinafter described, number eight," and forty feet deep; and to B, a house and land, described as " number eight," and as bounded " northeasterly on house and land hereinbefore described," and " southwesterly on land hereinbefore described," and seventy feet deep. The partition wall between the two houses was twenty feet from the southwesterly side of the Old Road, but the length of the strip of land from that side of that street to the northeasterly side of Fifth Street was less than one hundred and ten feet. *Held*, that the southwesterly side of the Old Road, and not its centre, was the boundary of the land to be divided; and that, in order to determine whether B was enti-tled to a lot seventy feet deep, or must yield part to A as the owner of the lot bounded southwesterly on Fifth Street, evidence of the condition of Fifth Street, whether laid down on the land or only marked out on paper, and of the acts and occupation of the parties under the partition, was necessary.

WRIT OF ENTRY. Trial before *Bigelow*, J., who reported the case to the full court. The material parts of a partition in the probate court, under which both parties claimed title, and of the plan which was annexed to the report of the commissioners to make partition, are copied in the margin.* The other facts are sufficiently stated in the opinion.

---

* The " commissioners appointed by the judge of probate for the county of Suffolk to divide and make partition of all the real estate of which Jonathan Harrington, late of Boston, in the county of Suffolk, mason, died seized in the counties of Suffolk and Norfolk, among the heirs of said deceased," in their report make an appraisal, one clause of which is thus:

" A certain piece of land with a wooden dwelling-house and other buildings thereon, situate at said South Boston, bounded and described as follows, viz: northeasterly on the Old Road, there measuring thirty one feet; southeasterly on land formerly of Ephraim Marsh, there measuring one hundred and thirty one feet; southwesterly on Fifth Street, there measuring thirty one feet; and north-westerly on land formerly of said Marsh, there measuring one hundred and thirty one feet; together with all the privileges and appurtenances to the same belong ing; which estate we appraise at the sum of two thousand dollars."

*P. W. Chandler & P. H. Sears,* for the demandant.

*S. Bartlett,* for the tenant.

SHAW, C. J. This is a writ of entry to recover a piece of land in South Boston, lying between Gold Street, formerly

---

So much of the division by the commissioners, as relates to the lot so appraised, is as follows:

"Seventh. A certain parcel of land with the buildings thereon, being part of the estate at South Boston, appraised at two thousand dollars, described and bounded as follows, viz: Northeasterly on the Old Road, there measuring thirty one feet; northwesterly on land formerly of Ephraim Marsh, there measuring twenty one feet and one inch; southwesterly on house and land hereinafter described, number eight, there measuring thirty one feet; and southeasterly on land formerly of said Marsh; together with the privileges and appurtenances to the same belonging; reserving for the use of the lot hereinafter described, number eight, a free and uninterrupted use, forever, of a passage way five feet wide, on the southeasterly side of said lot, in common with the owners of this lot: And also another lot of land at said South Boston, (also parcel of the estate at said South Boston, appraised at two thousand dollars,) bounded and described as follows, viz: Southwesterly on Fifth Street, there measuring thirty one feet; northwesterly on land of said Marsh, (formerly,) forty feet, five and a half inches; northeasterly on land hereinafter described, number eight, there measuring thirty one feet; and southeasterly on land formerly of said Marsh, there measuring forty feet, five and an half inches; together with the privileges and appurtenances to the same belonging, and together with the free and uninterrupted use forever, in a passage way five feet wide, on the southeasterly side of the lot of land next hereinafter described.

"Eighth. A certain piece of land at said South Boston, with the dwelling-house thereon (being parcel of the estate at South Boston, appraised at two thousand dollars) bounded and described as follows, viz: Northeasterly on the house and land hereinbefore described, there measuring thirty one feet; northwesterly on land formerly of Ephraim Marsh, there measuring sixty nine feet, five and an half inches; southwesterly on land hereinbefore described, there measuring thirty one feet; southeasterly on land formerly of said Marsh, there measuring sixty nine feet, five and an half inches; together with all the privileges and appurtenances to the same belonging; also the free and uninterrupted use and privilege in a passage way five feet wide, leading from the old road, across the southeasterly side of the land hereinbefore described, number seven, in common with the owners of said lot numbered seven.

The judge of probate, in his decree, assigns to Asa Fay and Grace Fay his wife, in her right, the land thus numbered seven; and to John Mann and Katy Mann, in her right, the land thus numbered eight; describing each as above.

Mann *v.* Dunham.

called "the Old Road," and Fifth Street. The land in contro-
versy lies somewhere midway between these two streets, and it
depends on fixing the true boundary line between them.

The whole lot fronting on the Old Road, of the width of
thirty one feet, bounded by straight lines on each side on land
formerly of Ephraim Marsh, and extending southwesterly about
one hundred and thirty one feet, was formerly the estate of Jona-
than Harrington, and in June 1827, was included in a partition
among his heirs; one portion thereof, being a lot on the Old
Road, and another lot on Fifth Street, being set off to Asa
Fay and Grace Fay, in her right, as one of said heirs; and a
parcel, lying between said two lots, being set off to John Mann
and Katy Mann, the demandant, in her right, she being another
of said heirs. The question is upon the terms and legal effect
of that partition. The said Katy Mann, now become a widow,
demands the part set off to her; and the tenants claim, through
mesne conveyances, that part of the estate, which by the parti-
tion was set off to Asa Fay and Grace, at the south end of the
land divided, on Fifth Street.

Before proceeding to the question of the construction of this
instrument, there is a preliminary one—on what principle such
an instrument is to be construed. Not as a judgment strictly, but
rather as an instrument *in pais*, which, when adopted and con-
firmed by the probate court, becomes binding upon the parties.
It is not like a deed from the owner of a whole parcel, with cer-
tain limits expressed, and afterwards a deed of the residue of the

---

The following is the substance of the "plan of estates assigned to Katy Mann
and Grace Fay," filed with the partition:

land to another, and the dividing line bounding each on the other is left doubtful. There, in construing the deed to the first grantee, the doubtful or equivocal words of description will be construed most favorably to the grantee, and least so to the grantor; and the second grantee can take only that which remained to the grantor, after the first grant, so construed.

It is rather like a partition by indenture, where each is grantor and grantee, and the whole takes effect at the same time. Describing one lot first and the other last gives no priority to the former. It is one act of the judge of probate, which *eo instanti* gives effect to both.

It is very possible that the commissioners, and afterwards the judge of probate, acted under the mistaken belief that there were one hundred and thirty one feet of available land, independent of the soil of either street, to be divided between these two heirs. But that mistake cannot now be corrected; the rights of the parties must be governed by the instrument.

The first boundary given is "northeasterly on the Old Road, there measuring thirty one feet." This way was what its name imports, the Old Road, leading to Dorchester Point, before that peninsula was annexed to Boston. There is another part of the description, which we think determines the question, that by this line was intended the southwesterly side of the Old Road, and not the *filum viæ*.

One settled rule in regard to all instruments of conveyance is, that monuments and abuttals, where they can be ascertained from the descriptive part of the instrument, will control measurements, if they cannot be reconciled. In this description, we find that the rear line of the first lot assigned to Fay and wife was twenty one feet back from the Old Road, and there coincided with the dividing line between the two dwelling-houses on the premises. According to the rule stated, this was a fixed monument. It was then in fact, and is now, twenty one feet back from the southwesterly line of the Old Road, and determines therefore that the southwesterly side of the Old Road, and not the *filum viæ*, was the *terminus à quo* of the lot to be divided, and the land southerly of that line one hundred and thirty one feet as the lot to be di-

vided.   The controverted question is, where, upon this partition, the dividing line is to be drawn, between the lot set off to Mann and wife, and the southerly lot set off to Fay and wife on Fifth Street.   Whether this line is to be drawn across twenty feet or forty feet back from Fifth Street, the southerly end of the lot of Mann and wife will bound on the northerly end of that of Fay and wife, and yet it may be so drawn as to make a difference of twenty feet, and give the controverted piece of twenty feet to the one or the other party.   It is, in this respect, like *Blaney* v. *Rice*, 20 Pick. 62 ; but there is no recorded map referred to, to settle the question.   It also resembles *Thacker* v. *Guardenier*, 7 Met. 484 ; but no prior occupation is shown, to remove the am·biguity.

To recur to the partition once more ; the commissioners, after setting off the first lot to Fay and wife, bounding it southerly on the fixed monument above stated—the line between the two houses—set off the southerly lot to Fay and wife, bounding on Fifth Street and running back northeasterly of the same width with the residue of the lot they were dividing, forty feet and five inches ; they then assign to Mann and wife a lot of land bounded northeasterly on the fixed line above stated, the line between the houses, and running southwesterly, of the same width above stated, sixty nine feet and five inches, and . there bounding on the land before assigned to Fay and wife.   But to satisfy both the assignments requires one hundred and nine feet and a fraction.   But if we assume that by Fifth Street, as the southwestern boundary, the commissioners intended the northeasterly side of that street, without including the half of the street, instead of one hundred and nine feet there are only about eighty five feet.   Both cannot have the full measure , which shall yield, or shall both yield in proportion ?

Perhaps the commissioners intended to measure to the middle of Fifth Street, which would be about the one hundred and thirty one feet, which were formerly owned by Harrington, and which they were dividing ; but perhaps they acted under a mis·take, and supposed there were one hundred and thirty one feet between the south side of the Old Road, and the north side of

Fifth Street; and there seems to us to be no presumption to settle it either way.

Under these circumstances, the court are of opinion, that the case discloses a latent ambiguity. On the instrument of partition all appears to be plain and regular. It would appear that there was a lot of about thirty one feet in breadth, and one hundred and thirty one feet in length, to be divided between the two. It would all appear to be alike, in the character of being land available for building or other private use, and not land subject to a perpetual easement for a street. We do not think the rule of *filum viæ* necessarily applies to it; because it is unusual to make the *filum* a *terminus a quo*, itself somewhat uncertain, to measure other lines from ; because it plainly was not so used at the other end of the lot, on the Old Road ; and because, if both had been so measured, the intermediate length of the lot would have been more than one hundred and thirty one feet. Still, as the whole lot was formerly owned by the intestate, extending one hundred and thirty one feet southerly from the north side of the Old Road, perhaps before Fifth Street was actually laid out and used as a highway, the probability is, that either by accident or design, the commissioners, to get the one hundred and thirty one feet, extended the lot to the middle of Fifth Street.

But these circumstances, some leading to the one conclusion and some to the other, appear, not in the instrument, but by the evidence *ab extra*, and confirm the conclusion, that it is a latent ambiguity ; and therefore, as in other cases of construction of instruments of conveyance, it is necessary to resort to other evidence to ascertain the intent of the makers.

The court are therefore of opinion that the case must go to a jury to determine, upon suitable and proper evidence, and under proper directions in matters of law, whether the commissioners, making this partition, intended to extend the southern lot set off to Fay and wife, to the central line of Fifth Street, according to the original title of Harrington, without regard to that street, which seems probable ; or whether they intended to limit that lot, to the northerly side of Fifth Street. In the former case, the demandant would be entitled to her whole sixty nine

feet and five inches, including the land in controversy; otherwise, the one or the other must fall short, or both, if the deficiency must be divided and apportioned.

It is to be recollected that the streets of South Boston are of a peculiar character; they were laid out provisionally in 1805, but were not to become actual highways till so ordered by the town or city government. *Henshaw* v. *Hunting*, 1 Gray, 203. And there is evidence in the present case, tending to show, that at the time of this partition Fifth Street was not much used, and some buildings projected into it.

The kind of evidence bearing upon this question of the intent of the commissioners, after a careful examination of their return will be, the condition and admeasurements of the whole lot; the limits of the lot of which the intestate died seized; the condition of Fifth Street, whether laid down on the land, or only marked out on paper, graded, built upon, occupied in whole or in part by private owners, or how otherwise; the occupation of the several part-owners, at or soon after the partition, whether exclusive or mixed; the erection of any fence or building, or any partition fence. The deed of Fay and wife, with whom the tenants are privy in estate, may be given in evidence for the demandant, if favorable to her; also the acts and declarations of either party, whilst actually holding and occupying under the partition, may be proved by the other.

If either can prove an exclusive, adverse and continued occupation for 20 years, this would amount to a disseizin, and would be evidence of title, independently of the terms of the partition. *New trial ordered.*

A trial was had at March term 1856, when the demandant introduced evidence that, at the time of the partition, Fifth Street was not laid out on the land, but only marked out on paper; and that the surveyor who made the plan annexed to the partition, in making his measurements upon the land, took, as the southwesterly boundary of the land to be divided, a line in Fifth Street, one hundred and ten feet from the partition wall between the two houses. *Verdict for the demandant.*